# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9151 | **DATE** | May 8, 2003 |
| **CASE TITLE** | *Heritage Environmental Servs, Inc. v. Metropolitan Water Reclamation Dist.* | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Heritage's objections to the R&R are overruled. Therefore, Heritage's motion for a preliminary injunction is denied. In addition, Heritage's motion in limine [13-1], which seeks to exclude extrinsic evidence relating to the contract, is denied. Finally, the District's motion for a directed finding [19-1] is denied as unnecessary in light of the denial of Heritage's motion for a preliminary injunction. Enter Memorandum and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | MAY 14 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | | |
| RTS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION.

| | | |
|---|---|---|
| HERITAGE ENVIRONMENTAL SERVICES, INC., an Indiana Corporation, Plaintiff, | ) ) ) ) | |
| v. | ) ) | 02 C 9151 |
| METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, an Illinois municipal corporation, Defendant. | ) ) ) ) ) ) | DOCKETED MAY 1 4 2003 |

## MEMORANDUM AND ORDER

Plaintiff Heritage Environmental Services, Inc. ("Heritage"), sought a preliminary injunction against Defendant Metropolitan Water Reclamation District of Greater Chicago (the "District"). In its motion, Heritage sought an order requiring the District to sign a permit that would allow it to continue performing hazardous waste disposal services on property it leased from the District. Magistrate Judge Nan R. Nolan issued a Report and Recommendation ("R&R") which recommended denial of Heritage's motion. Heritage filed timely objections. For the following reasons, Heritage's objections are overruled and its motion for a preliminary injunction is denied.

I. **Background**

Because the parties have not objected to Magistrate Judge Nolan's findings of fact, this court adopts them. Accordingly, the court will only provide a brief recap of the facts.

The District is a municipal corporation created by statute and charged with the protection of the region's waterways by collecting, treating and disposing of sewage. 70 ILCS § 2605, *et seq*. The District has the authority to acquire real property and lease it to third parties. 70 ILCS

§ 2605/8. Pursuant to this authority, in 1961 the District leased approximately 68.16 acres of land to Lemont Industrial District, Inc. ("LID"), for a term of 99 years.

LID subsequently subleased approximately 17.2 acres of this parcel to a hazardous and oily waste cleaning and storage company called PetroChem. In the mid-1980s, Heritage, a privately-held Indiana corporation, began to acquire PetroChem's assets. Heritage and PetroChem made various improvements to the property, including the construction of an aerosol can crushing unit. In 1988, Heritage purchased all of PetroChem.

Heritage then applied for a permit to operate a hazardous waste treatment, storage, and disposal facility at the site. The hazardous waste permit application process has multiple parts and requires the applicant to make various disclosures pursuant to the Resource Conservation and Recovery Act ("RCRA"). In or about 1992, while it was going through this process, Heritage contacted the District. Because the District owned the land at issue, Heritage needed the District to sign its permit application.

After extensive negotiations, the District agreed that LID would assign its lease to Heritage, subject to certain amendments. The agreement, which was entitled "Partial Assignment and Assumption of Lease" (the "Assignment"), was executed on December 4, 1992. The Assignment included broad indemnification and insurance provisions, increased the rental amount, and covered the remainder of the lease term, which was due to end on March 31, 2060.

With respect to the RCRA permit, the Assignment provided, in relevant part:

> 10.04 (Permit Applications). The Lessor agrees to execute Lessee's permit application for a RCRA Part B permit.... Subsequent to the initial permit term, Lessee may request the Lessor's legal and technical staffs to submit a recommendation to Lessor's Board of Commissioners, said recommendation not to be unreasonably withheld, seeking the approval for the execution of documents necessary for any subsequent permit renewal or extension.

On March 24, 1993, the Illinois Environmental Protection Agency issued a RCRA permit jointly to Heritage and the District. In June 2002, Heritage contacted the District about renewing the RCRA permit, which was set to expire on April 28, 2003. On July 23, 2002, Heritage sent two copies of the renewal application to the District for review. On October 29, 2002, the District sent Mark Liebrock, of the District's Site Remediation Section, to inspect Heritage's Lemont facility and issue a recommendation regarding the permit renewal application.

Liebrock agreed with the District's Law Department that renewal would expose the District to, in essence, unlimited liability. He therefore declined to recommend renewal. On December 12, 2002, the District's Principal Assistant Attorney, Carlton Lowe, notified Heritage's counsel that the District would not execute the renewal application. Lowe explained that regulatory agencies could still hold the District liable for any violation by Heritage, despite modification of certain language in their agreement.

On December 17, 2002, Heritage initiated the present action, seeking a temporary restraining order requiring the District to sign the permit renewal application. Because the Illinois Environmental Protection Agency agreed to allow Heritage more time to cure the certification deficiency, the court converted the TRO motion to a motion for a preliminary injunction. Heritage's theory justifying relief was that the District had breached its contract with Heritage to not "unreasonably withhold" a recommendation that the RCRA permit application be renewed and, as a result, Heritage would suffer irreparable harm to its business.

The motion was referred to Magistrate Judge Nolan for an evidentiary hearing. Magistrate Judge Nolan subsequently issued a R&R recommending that the preliminary injunction be denied because: (1) Heritage had failed to demonstrate a reasonable likelihood of

success on the merits of its breach of contract claim; and (2) Heritage had failed to establish irreparable harm.

## II. Discussion

### A. Standard of Review

This court must review the recommendation to deny the preliminary injunction using a de novo standard of review. *Advent Electronics, Inc. v. Buckman*, 112 F.3d 267, 274 (7th Cir. 1997). However, the court is not required to conduct another hearing to review the magistrate judge's findings and credibility determinations. *United States v. Raddatz*, 447 U.S. 667, 676 (1980); *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995).

This court has broad discretion to issue or deny a preliminary injunction. *Buckman*, 112 F.3d at 274. A party seeking to obtain a preliminary injunction must show: (1) a reasonable likelihood of success on the merits of its claim for relief; (2) that it has no adequate remedy at law; and (3) that it will suffer irreparable harm if the preliminary injunction is not granted. *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 803 (7th Cir. 2002). If the moving party cannot establish any one of these elements, then the court's inquiry ends and the injunction must be denied. *Abbott Laboratories v. Mead Johnson Co.*, 971 F.2d 6, 11 (7th Cir. 1992).

On the other hand, "[i]f the court is satisfied that these factors have been established, the court must then balance the harms to both parties using a 'sliding scale' analysis: the greater the moving party's likelihood of prevailing on the merits, the less strongly it must show that the balance of harms weighs in its favor." *Ferrell v. United States Dept. of Housing & Urban Development*, 186 F.3d 805, 811 (7th Cir. 1999). "The court must also consider the public interest by weighing the effect that either granting or denying the injunction will have on nonparties." *Id.*

Heritage has objected to Magistrate Judge Nolan's findings that it failed to show either a reasonable likelihood of success on the merits or irreparable harm. This court will consider each point in turn.

## B. Likelihood of Success on the Merits

With respect to Heritage's likelihood of success on the merits, Heritage contends that the magistrate judge: (1) should not have relied on extrinsic evidence in interpreting the language of the assignment agreement; (2) erred in finding that the District did not unreasonably withhold its recommendation that the permit be renewed; and (3) ignored the implied duty of good faith and fair dealing, which prevents the District from doing anything that would injure Heritage's right to enjoy the benefits of their agreement, and instead determined whether the District acted in its own best interest.

### 1. Extrinsic Evidence & the Meaning of the Agreement

According to Heritage, the District breached the assignment agreement when it "unreasonably" withheld approval of the RCRA permit application. In order to determine whether the District had indeed failed to uphold its part of the agreement, the magistrate judge first endeavored to determine what the District was obligated to do under the agreement. The agreement provided, in relevant part, that the District's legal and technical staffs were not to "unreasonably with[o]ld" a recommendation to the District Board of Commissioners to renew the RCRA permit for another term.

The magistrate judge concluded that the term "unreasonable" as used in the lease assignment agreement was ambiguous and thus looked to extrinsic evidence to ascertain its meaning. She held a full evidentiary hearing and examined documentary evidence, including a series of letters sent by the parties during the assignment agreement negotiation process.

Ultimately, she determined that the District did not have an ongoing obligation to renew the permit. Instead, she found that the contract only required the District to not unreasonably refuse to do so.

Under Illinois law, if a contract is clear and unambiguous, no evidence outside the contract may be considered in order to determine the meaning of the contract. *Emergency Med. Care, Inc. v. Marion Mem. Hosp.*, 94 F.3d 1059, 1061 (7th Cir. 1996); *A.A. Conte, Inc. v. Campbell-Lowrie-Lautermilch Corp.*, 477 N.E.2d 30, 33 (1st Dist. 1985). Ambiguity may be found in a contract only if the language is "reasonably or fairly susceptible to more than one construction." *Interim Health Care of N. Ill., Inc. v. Interim Health Care, Inc.*, 225 F.3d 876, 879 (7th Cir. 2000), *quoting A.A. Conte*, 477 N.E.2d at 33. There are two types of ambiguity: intrinsic and extrinsic. *Interim Health Care*, 225 F.3d at 879. "Intrinsic ambiguity exists when the agreement itself is unclear, and extrinsic ambiguity exists when a perfectly clear agreement is unclear when applied to the real world." *Id.*

In the present case, the court agrees with the magistrate judge that the contract is extrinsically ambiguous. It is true that the language in question – the phrase prohibiting the District from unreasonably withholding a recommendation to renew the RCRA permit – initially seems clear. Nevertheless, the various circumstances under which the District might actually refuse to renew the permit are not clear from the face of the contract. The District could have an almost mandatory obligation to renew. At the other end of the spectrum, it could also potentially simply be required to not act irrationally when deciding whether to renew.

Either way, the District clearly had some amount of discretion, contrary to Heritage's assertions. If the District had no discretion, the assignment would simply state that the District would agree to renew, and would not include the "unreasonable" modifier. Accordingly, while it

-6-

is clear that the District has some discretion in deciding whether to renew, the extent of that discretion is unclear. Therefore, this court must consider extrinsic evidence to ascertain the parties' intent. *See Toys "R" Us, Inc. v. NBD Trust Co. of Illinois*, 904 F.2d 1172, 1177 (7th Cir. 1990) (district court should have considered extrinsic evidence when determining whether consent to alter building had been unreasonably withheld because the modifier "unreasonably" was ambiguous).

Here, Heritage and the District sent a series of communications back and forth during the course of drafting the assignment agreement. Heritage wanted the right to cancel its lease of the Lemont property if its RCRA permit was denied. On the other hand, the District wanted the right to refuse to execute future permit applications if it determined that it was not in the District's best interest to renew. Ultimately, Heritage withdrew its request for the right to cancel the lease, but agreed to the "unreasonably withhold" language. Moreover, the record shows that Heritage's Chairman, Dr. Kenneth Price, specifically observed in writing that, "the ability of the Board of Commissioners [of the District] to reject future permits is recognized in the agreement and acceptable to Heritage." Accordingly, this court finds that the language in question in the assignment agreement gave the District the discretion to refuse to execute future permit applications if its refusal was reasonable.

### 2. Did the District Did Act Unreasonably?

The District based its decision not to renew on Heritage's compliance and safety record. Specifically, as noted in the R&R: (1) Heritage was subject to at least two civil fines which were not promptly and fairly disclosed in response to a specific District request; and (2) there were various hazardous waste spills at the Lemont site. Heritage nevertheless challenges the District's

-7-

decision not to renew, asserting that "the mere fact that its safety record was considered does not make the decision reasonable."

The court disagrees. At the risk of stating the obvious, something is reasonable if it is rational and something is unreasonable if it is irrational. *See General Elec. Co. v. U.S. Nuclear Regulatory Com'n*, 750 F.2d 1394, 1399 (7th Cir. 1984) (from a practical perspective, "unreasonable" is the same as arbitrary or capricious); *Head v. Lutheran General Hosp.*, 516 N.E.2d 921, 929 (1st Dist. 1987) ("arbitrary and capricious" means "an action or omission which is without fair, solid or substantial cause or reason"). Here, the District's decision not to recommend renewal was supported by a rational basis. Accordingly, this decision by definition cannot be unreasonable.

### 3. Good Faith & Fair Dealing

Coming at the District's refusal to execute the renewal from another angle, Heritage next contends that the magistrate judge ignored the implied duty of good faith and fair dealing when determining whether the District acted reasonably and in accordance with the assignment agreement and instead simply asked whether the District was acting in its own best interest. The magistrate judge determined that the term "unreasonable" as used in the contract did not mean that the District had a continuing obligation to renew the RCRA permit. Instead, she interpreted the term to mean that the District had to have some rational basis for its decision not to recommend renewal.

Illinois law implies a covenant of good faith and fair dealing in every contract. *Berhara v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992), *citing Anderson v. Burton Assocs., Ltd.*, 578 N.E.2d 199, 203 (1st Dist. 1991). However, this covenant is not an independent source of duties for the parties. *Id.* "Instead, it guides the construction of explicit

terms in the agreement." *Id.* Illinois cases have made clear that the covenant of good faith and fair dealing simply requires that a party vested with discretion "must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Id.*

Here, it is true that the magistrate judge did not specifically refer to the implied covenant of good faith and fair dealing. She did, however, point to Heritage's less than perfect compliance and safety record as a reason supporting the District's decision not to renew. After conducting a de novo review, this court agrees with the magistrate judge's conclusion that the District acted rationally in deciding not to recommend renewal of the RCRA permit. The hazardous waste spills on the property Heritage leased from the District and the fact that Heritage had been fined on at least two occasions and then failed to promptly disclose the fines in response to a specific District request justifies the District's decision. This court thus finds that it was eminently reasonable for the District to decline to renew the permit.

In turn, this means that the District did not breach the implied covenant of good faith and fair dealing. As long as a party has some good reason to decline to continue a renewable contractual relationship, that party has complied with the covenant of good faith and fair dealing, even if that party also had alternative motives to refuse to renew. *Dayan v. McDonald's Corp.*, 466 N.E.2d 958 (1st Dist. 1984). For example, in *Dayan*, the Illinois Appellate Court held that McDonald's had not improperly terminated an agreement with one of its franchisees. *Id.* at 962, 973-74. Specifically, the court found that McDonald's had good cause for terminating the franchise agreement because the franchise had failed to adhere to certain McDonald's standards. It thus concluded that McDonald's had not acted in bad faith. *Id.* at 973-74.

Here, as in *Dayan*, the District had a rational reason for refusing to renew the RCRA permit: Heritage's hazardous waste spills, civil fines, and failure to respond promptly to the District's inquiry regarding the fines. Because the District's decision not to renew the permit was supported by good reasons, it cannot be said to have acted in bad faith. *Accord Dayan*, 466 N.E.2d at 973-74. Thus, Heritage has failed to convince the court that it has a reasonable likelihood of success on the merits of its breach of contract claim or its breach of the implied duty of good faith and fair dealing.

### C. Irreparable Harm

Heritage also challenges the magistrate judge's finding that it failed to establish that it would suffer irreparable harm if the injunction were not granted. Although Heritage's motion for a preliminary injunction must be denied because it failed to establish a likelihood of success on the merits, the court will consider irreparable harm in the interests of completeness. "Irreparable harm is harm 'which cannot be repaired, retrieved, put down again, atoned for . . . [T]he injury must be of a particular nature, so that compensation in money alone cannot atone for it.'" *Graham v. Med. Mutual of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997). The quantum of irreparable harm that needs to be shown to prevail is a sliding scale: the greater a party's likelihood of success on the merits, the less the balance of harms needs to favor that party. *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 831 (7th Cir. 2002). Because Heritage's likelihood of success on the merits does not, at this point, appear to be substantial, it must show that the balance of harms is strongly against it.

The magistrate judge found that the loss of the RCRA permit would not cause Heritage irreparable harm for four reasons: (1) Heritage knew that there was a chance that its permit might not be renewed; (2) at least some evidence supported a finding that Heritage could

-10-

continue to operate its Lemont facility without a permit, although the permit loss would negatively impact business at the Lemont facility; (3) because Heritage operates twenty one facilities throughout the country, it may be able to transfer work to other facilities; and (4) Heritage's aerosol can crushing unit, which it claimed would become non-operational, was largely constructed long before Heritage had an RCRA permit or even approached the District about one.

The court will focus on the magistrate judge's first reason – that Heritage knew that renewal of the permit was not guaranteed – as it is the most fatal to Heritage's claim of irreparable injury. This is a breach of contract case, and Heritage knew that the District had the ability to reject future permits. Where a party knows of the potential consequences of a certain course of action, it cannot complain about those consequences if it chooses to pursue that course. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 903 (7th Cir. 2001). This means that Heritage cannot force the District to relinquish its rights under the contract because Heritage today, with the wisdom of 20/20 hindsight, doesn't wish to face the consequences of its bargain.

This conclusion is supported by the Seventh Circuit's decision in *Ty v. Jones*, which was cited with approval by the magistrate judge. In that case, the defendant began to produce stuffed toys depicting racing cars and decided to call its product "Beanie Racers." *Id.* Ty, the manufacturer of the well known "Beanie Babies" line of stuffed toys, sent the defendant a cease and desist letter but the defendant forged on with production. *Id.* On appeal, after the district court enjoined production of the "Beanie Racers," the Seventh Circuit rejected the defendant's irreparable harm argument, observing that it "rings hollow considering when [the defendant] decided to produce the Beanie Racers it had knowledge of the potential consequences." *Id.*

In the present case, as in *Ty*, Heritage knew the terms of the agreement when it entered into it. Specifically, it knew that the District did not have to agree to renew the permit. Heritage may currently regret its decision to enter into a contract which gave the District discretion about renewal. Because it knew that renewal was not guaranteed, however, it cannot complain about the District's decision not to renew the permit. Moreover, Heritage will still be able to continue operation of its twenty-one other facilities, and may even be able to continue using the Lemont facility in some capacity. Accordingly, the court finds that Heritage has failed to show the type of irreparable harm sufficient to justify the entry of a preliminary injunction.

### III. Conclusion

Heritage's objections to the Report and Recommendation are overruled. Specifically, Heritage has failed to show a likelihood of success on the merits of its breach of contract claim. It has also failed to show that it would suffer irreparable harm if a preliminary injunction were not granted. Therefore, Heritage's motion for a preliminary injunction is denied.

DATE: MAY 0 8 2003

Blanche M. Manning
United States District Judge

02cv9151.r&r